Zillah SHIRLEY, Plaintiff,

v.

Otis R. BOWEN, Defendant.

Civ. A. No. 85–2809.

United States District Court,
District of Columbia.

April 15, 1986.

John J. Connelly, Information Center for
Handicapped Individuals, Inc., Washington,
D.C., for plaintiff.

Claire M. Whitaker, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge:

Plaintiff Zillah Shirley brings this action in an effort to overturn a determination by the Secretary of Health and Human Services that she is not entitled to retirement insurance benefits under section 202(a) of the Social Security Act ("Act"), 42 U.S.C. § 402(a) (1982). She contends that the Secretary's determination was not supported by substantial evidence and that, accordingly, this Court should reverse that determination under section 205(g) of the Act, 42 U.S.C. § 405(g). The Secretary maintains, on the contrary, that her decision is adequately supported by the record.

Having reviewed the pleadings in support of the cross-motions for judgment filed by the parties, as well as the administrative record,[1] the Court determines that it should grant plaintiff's motion. Accordingly, the Court will enter an order directing the Secretary to award plaintiff retirement benefits.

## BACKGROUND

Plaintiff is a 66 year old woman. She has spent most of her time since 1966 living in Fort Lauderdale, Florida. During that time, she filed a number of claims with the Social Security Administration ("Administration"). First, in June 1981, she filed unsuccessful claims for Disability Benefits and Supplemental Security Income. Then in July 1982, she filed a claim for Retirement Income Benefits, which was also denied. After learning that she was two quarters short of the number necessary for entitlement to retirement benefits, she filed a petition for reconsideration, on October 26, 1982, which recited that she had performed two quarters of work as a domestic in Washington, D.C. Employer's quarterly tax returns, as well as the taxes owed for the wages paid her during that period—from June until December 1979—were submitted to the Administration on October 20, 1982 by her employer, Mr. Calvin Lee. Plaintiff claims that Mr. Lee, while a graduate student in Washington, had hired her to work in his home. Although the Administration denied her petition for reconsideration, plaintiff did not appeal. However, on September 27, 1983, she filed a new claim presenting evidence of employment between May and July of 1983. She appears to have been given credit for this employment; nevertheless, the Administration denied her claim because she still lacked one quarter of coverage. (A.R. at 134.)

In November 1983, Ms. Shirley visited a Social Security District office in Washington and spoke with a claims representative who suggested that the denial of her original July 1982 claim be again reconsidered. On May 3, 1984, the Administration declined to overturn the denial of both that claim and her second, September 1983 claim. On November 27, 1984, an Administrative Law Judge ("ALJ"), after a de novo hearing, affirmed those decisions. That determination, in turn, was affirmed by the Administration's Appeals Council on July 6, 1985. Plaintiff subsequently filed the instant suit.

## ANALYSIS

### A. Statutory Framework and Scope of Review

Although the absence of entries in the Secretary's records indicating that a claimant has worked during a particular period is presumptive evidence that the claimant was not so employed, a claimant may overcome that presumption upon petition to the Administration. 42 U.S.C. § 405(c)(4) and (7). A decision to not to conform the Administration records to evidence proffered by a claimant is reviewable under 42 U.S.C. § 405(g). 42 U.S.C. § 405(c)(8). Such a decision thus may be overturned by a reviewing court if it is not

---

**1.** Citations to the administrative record will hereafter be given as "A.R. at ____."

supported by "substantial evidence." [2] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted). While the standard of review is a deferential one, the court "is duty bound to give careful scrutiny to the entire record to assure that there is a sound foundation for the Secretary's findings and that [her] decision is rational." *Hurst v. Mathews,* 426 F.Supp. 245, 247 (E.D.Va.1976). Accordingly, an ALJ must explain his rejection of evidence that conflicts with his findings, *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979); *Baerga v. Richardson,* 500 F.2d 309, 312 (3d Cir.1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975); *Simons v. Heckler,* 567 F.Supp. 440, 443 (E.D.Pa. 1983); particularly where that rejection turns upon a determination of a witness' credibility. *Tieniber v. Heckler,* 720 F.2d 1251, 1254 (11th Cir.1983); *Lewin v. Schweiker,* 654 F.2d 631, 634–35 (9th Cir. 1981). If the reasons supporting an ALJ's determination, as presented in his written decision, are inadequate, and if that determination is otherwise unsupported by substantial evidence, it will be reversed by a reviewing court. *Rossi v. Califano,* 602 F.2d 55, 59 (3d Cir.1979).

## B. Review of the Secretary's Determination

█ In reviewing plaintiff's entitlement to retirement benefits, the ALJ refused to give plaintiff credit for having been employed in Washington for the last two quarters of 1979. That refusal was predicated upon the ALJ's belief that neither plaintiff nor her former employer, Mr. Lee, was being truthful in testifying that plaintiff

had worked during that time as a domestic for Mr. Lee. The ALJ's skepticism grew out of what he believed to have been omissions and contradictions in the record.

The ALJ focused first upon the fact that plaintiff did not claim work in 1979 until her October 1982 petition for reconsideration. A.R. at 34. He thus inferred that the 1979 employment was a "fiction which was perpetrated in an attempt to obtain retirement insurance benefits on behalf of claimant." A.R. at 35. What provoked this harsh judgment is not entirely clear. Plaintiff testified at the hearing that she had been employed by Mr. Lee as a domestic in the latter half of 1979. A.R. at 43. That testimony was corroborated by Mr. Lee. A.R. at 44. It was also evident from plaintiff's testimony that her memory sometimes failed her. Indeed, in the very documents referred to by the ALJ, plaintiff stated that she could not clearly remember what her prior work experience had been. Omission from those documents of her work for Mr. Lee in 1979 is entirely consistent with truthful testimony at the 1984 hearing.

The ALJ turned then to the tax returns and related documents submitted by Mr. Lee. Believing Mr. Lee to have testified that, on November 6, 1983, he both filed an Application for Employer Identification Number [3] and also submitted tax returns and remitted taxes, A.R. at 35, the ALJ found that this testimony conflicted with the record, which revealed that the returns were filed and taxes paid on October 20, 1982. In fact, Mr. Lee testified only that he filed the Application for Employer Identification Number in November of 1983, A.R. at 47; the tax returns and receipts clearly indicate on their face that they were executed in October 1982. Even if Mr. Lee

2. The applicable regulations provide that the Secretary will correct her records upon presentation of "satisfactory evidence," 20 C.F.R. § 404.821 (1985). At least one court has suggested that that provision merely indicates that the claimant bears the burden of proof, not that the Secretary's decision need not be supported by substantial evidence. *Day v. Heckler,* 735 F.2d 779, 783 (4th Cir.1984).

3. Mr. Lee testified that he filed the Application for Employer Identification Number, upon request from the Internal Revenue Service, subsequent to paying the employer taxes on plaintiff's wages. A.R. at 46–47.

had testified that *all* the documents were submitted in November 1983, the only possible inference could have been that Mr. Lee misspoke, not that he had perjured himself.

The ALJ was also troubled by discrepancies between certain amounts shown on the employer tax returns and on a corresponding W–2 form. A.R. at 35. The tax returns showed that wages of $1,100 and taxes of $134.86 were paid for each quarter. The W–2, on the other hand, shows FICA taxes of $134.86 on wages of $2,334.86. Without analyzing the cause of this discrepancy, the ALJ simply assumed that the documents were fabricated. A closer look at the figures reveals that the $2,334.86 is simply $2,200 ($1,100 × 2) plus $134.86. Evidently, whoever prepared the W–2 [4] inadvertently added $134.86, the tax due on one quarter's wages, to $2,200, the wages earned for both quarters. Such a discrepancy lends little or no support to the supposition that Mr. Lee falsely testified that plaintiff worked for him in 1979.

Finally, the ALJ compared the handwriting on the tax returns and receipts with that appearing on other documents submitted by plaintiff. A.R. at 35. He then decided that the writing on the former documents was also plaintiff's. *Id.* Even were there any basis to uphold this exercise in detective work, the conclusion drawn—that it was plaintiff who filled out the returns and paid the taxes—does not support the inference that plaintiff in fact did not work for Mr. Lee in 1979. It could very well have been that she filled out the forms and had Mr. Lee submit them. In any event, the conclusion drawn by the ALJ was wholly unwarranted.

Finally, the ALJ, for no documented reason, denied plaintiff an additional quarter earned in 1983. A.R. at 34. Apparently, the ALJ reviewed the previous denial of plaintiff's September 1983 claim, in which she presented evidence of one quarter's employment in the spring of that year. Learning that the Administration had in fact credited plaintiff with that quarter,

while denying her benefits because she was still one quarter short, *see* A.R. at 184, the ALJ evidently believed that his doubts as to plaintiff's credibility regarding her 1979 employment should be retroactively applied to a prior determination made by another factfinder. His subsequent reversal of that prior determination was entirely inappropriate.

In short, the reasons given by the ALJ to support his decision are inadequate and will not withstand judicial scrutiny. However, if his decision is otherwise supported by substantial evidence, it must be upheld. Yet, in this regard, the Secretary offers little to bolster the ALJ's analysis. She cites only certain discrepancies in the record contained in plaintiff's prior submissions and in those of Mr. Lee. Those inconsistencies are limited to quibbles as to how much Mr. Lee actually paid plaintiff ($3.25 or $3.50) and how many hours plaintiff worked per week. Significantly, the Secretary points to no such inconsistencies in the testimony given by plaintiff and Mr. Lee at the 1984 hearing. The Secretary also notes that plaintiff in her 1981 application for Supplemental Security Income listed her home as being in Fort Lauderdale, A.R. at 75, and that medical records from 1972 and 1981 also show a home address in Florida. A.R. at 133, 147. The Secretary then asks the Court to draw the inference that plaintiff never lived anywhere but in Florida. Yet plaintiff testified at the 1984 hearing that she traveled back and forth between Washington and Florida. A.R. at 41, 44. That testimony is corroborated by affidavits from Mr. Lee and plaintiff's son. A.R. at 20, 21. Finally, the Secretary makes no attempt to support the ALJ's decision to deny plaintiff credit for the 1983 quarter.

On the whole, then, the ALJ's determination that plaintiff is not entitled to retirement benefits is not supported by substantial evidence, as well as not being supported by his written decision.

Accordingly, the Court grants plaintiff's motion for judgment reversing the Secre-

---

**4.** It is not clear from the record who prepared that document.

tary's denial of benefits and will direct the Secretary to pay such benefits to plaintiff, retroactive to the date of plaintiff's first application for benefits, July 29, 1982.